Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6618 | **DATE** | 4/23/2002 |
| **CASE TITLE** | Woods, et al. vs. Clay, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' motion to dismiss [5-1], [18-1] is denied. Defendants (if they have not already done so) are required to answer the complaint by 5/6/02. Status hearing is set for 5/30/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 23 2002 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/23/2002 | |
| | | 02 APR 23 PM 4:27 | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES W. WOODS and TOI WOODS, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DAVID CLAY, in both his individual and )<br>official capacities; OSCAR PERRY, in both )<br>his individual and official capacities; )<br>E. PRINCE, in both his individual and )<br>official capacities; JOHN DOE 1, an )<br>unidentified police officer for the City of )<br>Harvey, Illinois, in both his individual and )<br>official capacities; JOHN DOE 2, an )<br>unidentified police officer for the City of )<br>Harvey, Illinois, in both his individual and )<br>official capacities; CITY OF HARVEY, )<br>ILLINOIS, a municipal corporation; and )<br>WILLA JOHNSON-JONES, d/b/a the )<br>Fifty Yard Line Sports Bar and Grill, )<br>)<br>Defendants. ) | No. 01 C 6618<br>Judge Joan Humphrey Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, James W. Woods and Toi Woods, filed an eight-count complaint against defendants for violations of 42 U.S.C. § 1983 (Counts I, II, III), false arrest/imprisonment (Count IV), intentional infliction of emotional distress (Count V), battery (Count VI), malicious prosecution (Count VII), and violation of the Illinois Constitution (Count VIII), stemming from plaintiffs' arrest and detention in the City of Harvey. Defendants David Clay ("Clay), Oscar Perry ("Perry"), E. Prince ("Prince") and the City of Harvey have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Count V. Defendant Willa Johnson-Jones has joined the motion. This court has jurisdiction pursuant to 28 U.S.C. §§ 1343, 1367. For the reasons stated herein, the court denies defendants' motion.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## FACTS

Plaintiffs James Woods and Toi Woods are residents of Cook County, Illinois, and are married to each other. James Woods is a City of Chicago police officer and Toi Woods is a desktop publisher. On or about November 18, 2000, plaintiffs attended a private party at the Fifty Yard Sports Bar and Grill ("Grill"), a nightclub in Harvey, Illinois. While there, an altercation arose between a Grill patron and a Grill security guard. James Woods, although off-duty, intervened. He displayed his City of Chicago police officer badge, verbally announced that he was a police officer, and then proceeded to restrain the guest involved in order to prevent the altercation from escalating.

Within moments, Grill security guards, including but not limited to defendant Clay (who is also a City of Harvey police officer), physically forced James Woods to the ground, handcuffed him and restrained him, despite their knowledge that he was a police officer only attempting to subdue the altercation, actions which plaintiffs contend constituted unnecessary

and excessive force. Although James Woods informed Clay that he was a Chicago Police Officer and that he was trying to break up a fight, Clay responded, "So what?" Clay further remarked, "Nigger, you ain't in Chicago anymore, punk." Toi Woods, observing the aforementioned, stated to the guards, "That's my husband, let him go. He's a Chicago cop." Upon making that statement, Grill security guards physically restrained her and handcuffed her.

Shortly thereafter, officers of the City of Harvey Police Department, including but not limited to defendants Perry, Prince, John Doe 1, and John Doe 2, arrived at the Grill. One or more of them spoke with Clay. Within minutes, Clay, Prince, Perry and John Doe 1 took plaintiffs into custody, continued to restrain them with handcuffs and transported them by separate squad cars to the City of Harvey Police Department, even though they had not charged plaintiffs with any criminal offense. Before leaving Grill premises, John Doe 2 inquired of Perry as to why plaintiffs were being taken into custody. John Doe 2 also asked, "What are we supposed to do with them?" Perry responded, "He's a Chicago cop? We'll just let their asses stay in jail a few hours."

Plaintiffs were jailed in separate holding cells at the City of Harvey Police Department. While in the holding cell, James Woods was permitted to call his commander at the Chicago Police Department and a Fraternal Order of Police attorney to inform them of the incarceration. The Chicago Police Department then called the City of Harvey Police Department to determine why plaintiffs were being detained. Perry then summoned the lock-up officer (the City of Harvey police officer responsible for watching over the holding cells) and asked him why James Woods had been allowed to make calls since he had not been charged with an offense. The lock-up officer then told James Woods that he was not "technically allowed to make any phone calls

3

because he was not charged with any crimes." The lock-up officer also told James Woods that he thought that it was "bullshit," that he and his wife were being detained.

Only after discovering that the Chicago Police Department had been inquiring into the validity of plaintiffs' detention were charges brought against plaintiffs. Clay filed charges against James Woods for disorderly conduct and obstructing a peace officer and filed charges against Toi Woods for disorderly conduct. Plaintiffs remained in police custody overnight, more than eight hours before being released on bond.

On December 5 and 28, 2000, James and Toi Woods, respectively, appeared before the Circuit Court of Cook County to respond to the charges against them. No complaining witnesses appeared to testify and the State moved to dismiss the charges. Plaintiffs assert that at no time did they the commit any illegal act, nor provide the Grill security guards or the City of Harvey police officers with probable cause to believe that either of them committed any illegal act. They further assert that at the time of the incident in question the City of Harvey Police Department had a custom and policy of harassing, without probable cause or suspicion, Chicago police officers.

Plaintiffs allege, in Count V, that their arrest and imprisonment was without probable cause and done solely for the purpose of harassment and, as such, constitutes extreme and outrageous conduct, beyond the bounds of decency. Plaintiffs also allege that defendants intended that their conduct inflict severe emotional distress or knew that their was a high probability that their conduct would cause severe emotional distress, and that as a proximate result of defendants' conduct of causing plaintiffs to be handcuffed, taken into police custody, transported in squad cars and physically detained in jail cells for an entire night, plaintiffs lost

4

sleep, suffered gross humiliation, shame and embarrassment, physical discomfort, mental anguish, injury to their reputations, and lost income.

## DISCUSSION

Defendants (except the unidentified officers) move to dismiss Count V, the claim for intentional infliction of emotional distress. Under Illinois law, the following elements are required to state a claim for the tort of intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress or knowledge that there is a high probability of causing severe emotional distress; (3) the conduct actually caused severe emotional distress. *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 360 N.E.2d 765, 767 (Ill. 1976); *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498, 506 (Ill. 1994). Defendants contend plaintiffs have failed to adequately allege the first and third elements.

<u>Extreme and Outrageous Conduct</u>

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Pub. Fin. Corp.*, 66 Ill.2d 85, 360 N.E.2d at 767 (quoting Restatement (Second) of Torts § 46, comment *d* (1965)). Whether conduct is extreme and outrageous is "judged on an objective standard based on all of the facts and circumstances of a particular case." *Doe*, 161 Ill.2d 374, 641 N.E.2d at 507 (citation omitted). "Conduct is of an extreme and outrageous character where recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (quotation omitted). Although "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient, *id.*, conduct may be characterized as extreme and outrageous where "(1) the character of the conduct itself is extreme and outrageous (2) the conduct arises out of an abuse of a position or

5

relationship in which the defendant has authority over the plaintiff, or (3) the defendant knew of some peculiar susceptibility of the plaintiff to emotional distress." *Wexler* v. *Mieszcak*, No. 93 C 5942, 1995 WL 453030, *11 (N.D. Ill. July 28, 1995) (Hart, J.) (citing *Rudis* v. *Nat'l College of Educ.*, 191 Ill. App. 3d 1009, 548 N.E.2d 474, 476 (1st Dist. 1989)); *see also Doe*, 161 Ill.2d 374, 641 N.E.2d at 507.

Defendants assert that the conduct alleged in the complaint does not rise to the level of egregiousness necessary to satisfy the extreme and outrageous element, because merely being handcuffed, placed into custody, taken to the police station and placed in a cell for a night (even after James Woods displayed his badge) would not cause a person to utter the word "Outrageous!" Plaintiffs respond that the conduct alleged in the complaint can be considered extreme and outrageous in and of itself and also because it involves an abuse of police authority.

The court agrees with plaintiffs. One of the positions of authority specifically named by the Illinois Supreme Court as giving rise to extreme and outrageous conduct for abuse of that position is that of a police officer. *See Doe*, 161 Ill.2d 374, 641 N.E.2d at 507 ("The Restatement lists police officers, school authorities, landlords and collecting creditors as examples of types of individuals who in exercising their authority can become liable for extreme abuses of their positions.") (citation omitted). When an abuse of position of authority is at issue, courts examine whether defendant reasonably believed the objective was legitimate. *Id.* More latitude is given a defendant in pursuing legitimate objectives. *Id.*

The complaint, contrary to defendants' suggestion, does not merely allege usual police conduct, i.e. placing persons into custody for cause, and taking them to the police station. Reading the complaint in plaintiffs' favor, a jury could infer an extreme abuse of police authority in that defendants used excessive force and falsely arrested and imprisoned plaintiffs not because

6

there was probable cause of any crime, but solely to harass and inflict severe emotional distress on James Woods, a Chicago police officer, and his wife.

After James Woods announced that he was Chicago police officer and displayed his badge, he was forced to the ground, physically restrained and handcuffed by Clay (a Grill security guard and a Harvey police officer) and other Grill security guards, despite defendants' knowledge that Woods was only trying to subdue an altercation. The allegations indicate the defendants knew that Woods was only trying to help an altercation between a guest and Grill security guard from escalating. Indeed, Clay's response was "So what?" and "Nigger, you ain't in Chicago anymore, punk." Similarly, Toi Woods was restrained and handcuffed by defendants after she reiterated that her husband was a Chicago police officer and requested that he be let go.

Once the other Harvey police officers – Perry, Prince and the John Does – arrived, one or more of them spoke with Clay, after which plaintiffs continued to be restrained in handcuffs and were transported to jail without being charged. The defendants' knowledge that plaintiffs had engaged in no wrong is evidenced by John Doe 2's inquiry of Perry as to why plaintiffs were being taken into custody and what should be done with plaintiffs, to which Perry responded, "He's a Chicago cop? We'll just let their asses stay in jail a few hours."

A jury could infer the abuse of power continued by detaining plaintiffs for no reason in separate jail cells overnight for eight hours, and in that after Perry found out James Woods was permitted to make a phone call, Perry told the lock-up officer that Woods was not allowed to make calls since he had not been charged with an offense. The lock-up officer communicated that information to James Woods and added that he thought it was "bullshit" that he and his wife were being detained. The alleged abuse of power died not stop but continued with Clay's

7

bringing allegedly false charges (as an alleged cover-up) against both plaintiffs, which plaintiffs were forced to defend in court only to have the case dismissed for failure to prosecute.

Such allegations could cause an average member of the community to resent the defendants and exclaim "Outrageous!" Indeed, several other courts addressing similar police abuses of power have concluded likewise. *See Holder* v. *Ivanjack*, 39 F. Supp. 2d 965, 978 (N.D. Ill. 1999) (denying motion to dismiss where, *inter alia*, defendants, Chicago police officers, attacked plaintiff (including beating and kicking him), swore at him, subjected him to racial slurs and told him he was "going to jail tonight" merely because plaintiff (also a Chicago patrol officer) who was off-duty tried to identify himself as Chicago police officer by showing his badge at the scene of a reported shooting incident); *Guerra* v. *Hunger*, No. 97 C 8772, 1998 WL 246399, *12 (N.D. Ill. April 30, 1998) (Conlon, J.) (denying motion to dismiss where defendant, Chicago police officer, responded to plaintiff's query about a parking ticket by becoming verbally abusive, and with two other officers wrestled plaintiff to the ground, handcuffed him and placed him under arrest during which he sustained a fractured shoulder and laceration to his head (all in the presence of plaintiff's nine-year old son), then transported him to jail where he was detained for several hours and defendants subsequently conducted a warrantless search of his vehicle and charged him with resisting arrest of which he was later acquitted); *Henry* v. *Ramos*, No. 97 C 4025, 1997 WL 610781, *2 (N.D. Ill. Sept. 28, 1997) (Kocoras, J.) (denying motion to dismiss where police officers abused their power "to arrest and

eventually convict an innocent person, causing him to endure jail time for no reason.").[1] Thus, the court concludes plaintiffs have adequately alleged extreme and outrageous conduct.

Severe Emotional Distress

Defendants also claim that plaintiffs failed to sufficiently allege severe emotional distress, arguing that plaintiffs' contention that the conduct resulted in grief, shame, humiliation, worry or other mental condition is insufficient. Defendants are correct that mere "fright, horror, grief shame, humiliation, worry . . . alone are not actionable," *Pub. Fin. Corp.*, 66 Ill.2d 85, 360 N.E.2d at 767 (quoting Restatement (Second) of Torts § 46, Comment *j*), and that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id.* However, the purpose of the resulting severe distress element is to "prevent fictitious claims." *Doe*, 161 Ill.2d 374, 641 N.E.2d at 508. And the Illinois Supreme Court has recognized that "the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Id.* Moreover, "[t]he intensity and the duration of the distress are also factors to be considered[.]" *Pub. Fin. Corp.*, 66 Ill.2d 85, 360 N.E.2d at 767. Indeed, physical harm is not a requirement "if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone[.]" RESTATEMENT (SECOND) OF TORTS § 46, Comment *k*).

---

[1] *Doe v. City of Chicago*, 39 F. Supp.2d 1106 (N.D. Ill. 1999), is inapposite in that not only was it decided on summary judgment but the only evidence with respect to the intentional infliction of emotional distress claim against the named defendants (towing company and one of its employees) was that they had been "rude." The conduct of the police officer who arrested the plaintiff, handcuffed her in front of her son and took her to the police station, was not at issue because he was not a party to that claim. *See id.* at 1114. *Briggs v. N. Shore Sanitary Dist.*, 914 F. Supp. 245 (N.D. Ill. 1996), a case involving, *inter alia*, racial slurs against plaintiff, is inapposite because it deals with emotional distress claims against an employer and courts have held that, in such context, a plaintiff must allege more than mere discrimination to state a claim for intentional infliction of emotional distress. *See id.* at 251.

The court concludes that the complaint sufficiently alleges severe emotional distress in that it has already found that plaintiffs sufficiently alleged extreme and outrageous conduct, which when combined with the other allegations, such as suffering physical discomfort, mental anguish, loss of reputation and income, are enough to indicate that plaintiffs may have suffered more than a reasonable person should be expected to endure. That the extreme and outrageous conduct involved plaintiffs being subjected to a series of harassing and abusive behaviors, including their stay overnight in jail and subsequent allegedly trumped up charges against which they had to defend, lends further support to their distress allegations. *See Burns v. Cineplex Odeon, Inc.*, No. 95 C 5280, 1996 WL 501742, *15 (N.D. Ill. Sept. 3, 1996) (denying motion to dismiss where, *inter alia*, complaint alleged "severe emotional harm and emotional injury" as a result of the following conduct: defendants approached plaintiff, who was with his wife in a movie theater, and in response to him calmly placing his hands over his head, threw plaintiff to the ground, handcuffed him, falsely arrested him and charged him with resisting arrest (of which a jury acquitted him) and plaintiff's wife had been searched without probable cause and search warrant).[2] Thus, the court concludes plaintiffs have sufficiently alleged that they suffered severe emotional distress.

---

[2] *Lewis v. Cotton*, 932 F Supp. 1116 (N.D. Ill. 1996), is inapposite in that not only did it involve the employment context, but the court concluded that the complaint failed even to allege any "extreme and outrageous conduct." *Id.* at 1118. *Serpico v. Menard*, 927 F. Supp. 276 (N.D. Ill. 1996), a case involving a store owner and customer, is inapposite because although it involved a type of harassment (store pursing legal action against customer for inadvertantly leaving store with $0.70 nut in pocket), it did not involve the abuse of position of a police officer or other person in a position of authority. *See id.* at 281.

## CONCLUSION

The court denies defendants' motion to dismiss [#5] [#18]. Defendants (if they have not already done so) are required to answer the complaint by May 6, 2002.

Date: April 23, 2002                Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge

11